## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

CASE NO.

NORWEGIAN HULL CLUB, as leading
underwriter subscribing to Builder's Risk Policy
No. MAHHY1603684, for and on behalf of
subscribing underwriters as their interests may
appear ROYAL & SUN ALLIANCE
INSURANCE PLC, Lloyd's Syndicates: BRIT
SYN - 2987, MARKEL SYN - 3000, QBE SYN -
1036, CHANNEL SYN 2015, and NEON SYN -
2468, and ALLIANZ GLOBAL CORPORATE &
SPECIALTY MARINE INSURANCE
COMPANY,

  Plaintiffs,

vs.

NORTH STAR FISHING COMPANY LLC
and EASTERN SHIPBUILDING GROUP, INC.,

  Defendants.

_____/

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

  Plaintiff, Norwegian Hull Club ("NHC"), by their attorneys Holland & Knight

LLP, for and on behalf of subscribing underwriters[1] as their interests may appear in

Builder's Risk Policy No. MAHHY1603684 (the "Policy"), for their complaint

---

[1] Royal and Sun Alliance Insurance Plc and Lloyd's syndicates Brit Syn - 2987, Markel Syn - 3000, QBE Syn - 1036, Channel Syn - 2015, and Neon Syn - 2468 ("Lloyd's Syndicates"), and Allianz Global Corporate & Specialty Marine Insurance Company ("AGCS") (NHC, Lloyd's Syndicates, and AGCS collectively, the "Underwriters").

seeking declaratory judgment against defendants North Star Fishing Company LLC, formerly Iquique US LLC ("North Star") and Eastern Shipbuilding Group, Inc. ("ESG") (North Star and ESG collectively, the "Defendants" or "Assureds"), allege upon information and belief as follows:

## THE PARTIES

1.     Plaintiff Norwegian Hull Club is the lead underwriter subscribing to the Policy, and is citizen of a foreign state as it is a corporation organized and existing under the laws of Norway, with its principal place of business at Solheimsgaten 5, 5058, Bergen, Norway, and appears herein for and on behalf of the subscribing underwriters on the policy.

2.     Subscribing underwriters Royal and Sun Alliance Insurance Plc, Lloyd's syndicates: Brit Syn - 2987, Markel Syn - 3000, QBE Syn - 1036, Channel Syn - 2015, and Neon Syn – 2468 are all citizens of a foreign state with business addresses in London, England.  Allianz Global Corporate & Specialty Marine Insurance Company is located in New York, but is a citizen of a foreign state, and a business unit of the Allianz Group with its headquarters in Munich, Germany.

3.     Upon information and belief, Defendant North Star is a limited liability corporation organized and existing under the laws of the State of Washington with a principal place of business at 2320 W. Commodore Way #200, Seattle, Washington 98199.

2

4.    Upon information and belief, Defendant ESG is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 2200 Nelson Street, Panama City, Florida 32401.

## JURISDICTION AND VENUE

5.    The Court has subject matter jurisdiction over this matter as an Admiralty and Maritime claim pursuant to 28 U.S.C. § 1333(1) as the action concerns a dispute over coverage under a marine insurance contract for builder's risks and hull, materials, machinery and outfit of a vessel, namely the fishing trawler, M/V North Star, which was damaged when it broke free from its berth at the ESG shipyard during Hurricane Michael on or about October 10, 2018, grounded in adjacent waterways and was returned to the ESG shipyard by marine salvage contractors, and was subsequently repaired.   Further, this action is within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the Admiralty and Maritime jurisdiction of the United States.

6.    This Court further has subject matter jurisdiction pursuant to 28 U.S.C. § 2201 for a declaratory judgment in that an actual controversy exists between Underwriters and Assureds as to their rights and obligations under the marine insurance contract, and in particular whether Underwriters have already paid the maximum liability due and owing to Assureds under the Policy, and are not obligated to pay the further demands from Assureds for additional losses in excess

of the limits stipulated in the Policy.  The aforesaid controversy can be determined by a judgment of this Court, without further suit.

7.     This Court has subject matter jurisdiction within the meaning of 28 U.S.C. § 1332(a)(2) as the complaint alleges an action between citizens of a State and citizens or subjects of foreign states as defendant North Star, is a Washington limited liability company, defendant ESG is a Florida corporation, and Underwriters are subjects a foreign state or foreign states, and in that the disputes are for an amount in controversy exceeding the sum of $75,000, exclusive of interest and costs.

8.     By letter dated August 26, 2021, counsel for North Star and ESG wrote to NHC as the lead underwriter to demand payment for repairs to the vessel, M/V NORTH STAR, in an amount exceeding $23 Million over and above the limit of liability for Particular Average "PA" damage established by the Agreed Value or "Final Contract Value: USD 77,000,000" stipulated in the Policy.  The Assureds' demand is based on its assertion that the Escalation Clause in the form AIBRC clauses can be invoked "after the fact" to increase coverage limits of the Policy on a unilateral and retroactive basis to provide coverage for repairs to the vessel which exceed the Agreed Value under the Policy.

9.     In order to minimize the theoretical further accrual of the claimed losses by Assureds, which Underwriters deny are due and owing, Underwriters find

it necessary to submit this complaint for a declaratory judgment instead of awaiting legal actions from the Assureds.

10.     Underwriters respectfully request an adjudication of their obligations, if any, to pay the contested amounts in excess of the limits under the Policy demanded by Assureds.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) as substantially all of the events giving rise to the claims at issue in this controversy occurred in this District as the defendant ESG resides in and is domiciled in this District, the underlying vessel construction contract was entered into by ESG and North Star within this District, the vessel M/V North Star was constructed pursuant to the vessel construction contract at ESG's shipyard located in Panama City, Florida, and the vessel construction contract required North Star to procure and maintain Builder's Risks insurance resulting in the Policy which is the subject of this action.

## BACKGROUND

12.     North Star entered a vessel construction contract dated December 22, 2015 with ESG to build the vessel (Hull No. 177 ("the "M/V North Star" or the "Vessel")) (the "Contract[2]") at its facility in Panama City, Florida.  The Contract Price specified in the shipbuilding contract was USD 72,008,235 (according to the

---

[2] The "Contract" is subject to the laws of the State of Florida.

Milestone Payment Schedule Exhibit D).  Any increase or decrease in the Contract

Price was required to be set forth in a Change Order entered pursuant to Article IV.

13.    North Star procured the Policy via its broker, Lockton, on January

14, 2016.  On January 28, 2016, Endorsement No. 2 was issued listing Glacier

Fishing Company as an additional assured, and adding ESG as a named assured.

## THE POLICY AND ENDORSEMENTS

14.    The Policy was obtained by North Star to cover construction of a

"New Fishing Vessel" including under "Interest" the following: "Hulls, Materials

etc., Machinery, Outfit etc. and everything connected therewith."  The Policy cover

note incorporates by reference under "Conditions" the following:

> *American Institute Builders Risks Clauses (Feb. 8. 1979)(13-L),*
>
> *American Hull Insurance Syndicate Addendum No. 1 to the American Institute Builders Risks Clauses (Feb. 8, 1979) 13L-1.*
>
> *Protection and Indemnity Clause in the American Institute Builders Risks Clauses deleted and replaced with Protection and Indemnity as per SP 23 (Revised 1/56) during launching and trials.*

15.    The American Institute Builders Risk Clauses (Feb. 8, 1979) (13-l)

("AIBRC") contain the following clauses:

Lines 37-42 entitled "Agreed Value"

> *The Vessel, for so much as concerns the Assured, by agreement between the Assured and the Underwriters in this Policy, is and shall be valued at the completed contract price plus the value of materials and*

*equipment destined for the Vessel but not included in such price.  If no amount is stated for such materials and equipment, Underwriters shall have no liability for any loss, damage, or expense thereto or in connection herewith, and such materials and equipment shall not be deemed a part of the Vessel.*

*The Agreed Value is provisionally declared as $ ………………, being the contract price of $............................. and $.......................... for materials and equipment destined for the Vessel but not included in the contract price.*

Lines 43-48 entitled "Escalation"

*In the event of any increase or decrease in the cost of labor or materials, or in the event of any change in the specifications or design of the Vessel (not constituting a material change for purposes of the held covered provisions of the Subject Matter clause), the Agreed Value shall be adjusted accordingly, but any increase shall be limited to ……….. per cent of the Agreed Value as provisionally declared , and the Amount Insured shall be adjusted proportionately; provided that the Assured shall pay premium at the full Policy rate on the total construction cost of the Vessel of this insurance, but the Underwriters shall in no event be liable under this Policy for more than the Agreed Value provisionally declared plus said percentage thereof.*

16.   The Policy cover note stipulated a "Final Contract Value: USD 77,000,000" and described the "Sum Insured" as "100% of value and amounts as herein."  The Policy cover note does not address the Escalation Clause, nor does it provide a value for the percent (%) of the Agreed Value available as an increased limit for an adjustment of the Agreed Value.

17.   The Vessel was scheduled to be delivered to North Star on November 19, 2018.  As of October 8, 2018, just prior to the loss, the Vessel was out of the drydock, afloat and alongside the outfitting pier.  All equipment, including

engine components, bridge equipment and main deck equipment were installed. The Vessel was fully operational and navigational subject only to a *de minimis* amount of work which remained outstanding including final sea trials and commissioning of equipment on the Vessel.

18.  On October 10, 2018, Hurricane Michael (a CAT 4/5 Hurricane) made landfall and the eye of the storm passed over Panama City, Florida where the ESG facility is located. The Vessel broke loose from her mooring, drifted off her position, and grounded. After a salvage operation, the Vessel was recovered and returned to ESG's facility on December 13, 2018.

19.  North Star and ESG entered into a "Vessel Inspection Preservation Ripout and Cleanup Contract" dated December 11, 2018 to perform the necessary repair work scope on the salvaged Vessel as described in the specification attached to the contract. As of June 17, 2019, the First Amendment to the Vessel Construction Contract was entered between the Assured and ESG to perform all work "set forth in the Amended and Restated Vessel Specification to restore the Vessel to its undamaged, new condition as existed prior to the Storm ('Reconstruction')."

20.  North Star's post-loss email to NHC of July 9, 2019 provided a summary of all pre-loss change orders to the construction contract, representing a total increase of USD 125,269.

21.    In the summer of 2020, NHC's surveyor reported an increase in the repair costs estimate, which pushed the estimate above the Agreed Value (which appears in the Policy cover note as "Final Contract Value: USD $77,000,000.")  As of August 3, 2020, the estimated costs of repairing the Vessel to her pre-damaged condition were said to be around USD 86,000,000.

22.    Underwriters, to date, have paid USD $74,881,440.22 to Assureds under the Policy.   The balance of approximately USD $1,938,559.78 million as adjusted in the Richards Hogg Lindley ("RHL") adjustment dated August 24, 2021, is undisputed by Underwriters, and in the process of being paid to Assureds.

23.    On September 23, 2020, North Star advised that they intended to submit documentation to increase the Agreed Value in the Policy as follows:

> the Assureds intend to submit documentation necessary to adjust the Agreed Value as mandated under the Escalation Clause.  Contrary to your assertion, the absence of a percentage does not render the Clause ineffective.  Rather, the Clause, by its plain terms, makes clear that the percentage merely limits the amount by which the Agreed Value is to be increased.  Here, the absence of a percentage simply means that there is no limit.  As adjusted, we expect the Agreed Value will be adequate to cover all costs of repair and sue and labor.

24.    By email dated October 22, 2020, through their broker Lockton, the Assured proposed Endorsement No. 11 seeking "to amend the Agreed Insured Value of the newbuilding Hull #177 renamed "NORTH STAR" based on costs from Eastern Shipbuilding Group up to October 10, 2018 from USD 77,000,000 to USD 98,242,449 plus Owner's furnished Equipment being USD 10,800,000."  Thus, the

proposed Endorsement No. 11 sought to amend the Final Contract Value stipulated in the Policy cover note as USD 77,000,000 to have the corresponding Policy limit unilaterally and retroactively increased to USD 109,042,449.

25.    By letter dated October 30, 2020, NHC responded as claims leader for the Policy to the Endorsement No. 11 rejecting the position asserted by the Assured to increase the established PA limit of the Policy above the Agreed Value of USD 77,000,000.  NHC reserved all rights including the right to deny or disclaim coverage and/or pursue a declaratory relief action against the Assureds.

26.    By email dated February 12, 2021, NHC provided the Assureds with the final adjustment of the claim by RHL stating: "we are available at your convenience to discuss the adjustment together with RHL. We are also prepared to arrange payment in line with the adjustment."

27.    By email dated February 19, 2021, NHC email the Assureds with the amended final adjustment prepared by RHL.  By email dated March 17, 2021, NHC again reached out to the Assureds to indicate: "we look forward to receiving your feedback to the draft final adjustment [from RHL]."

28.    By email dated April 8, 2021, NHC wrote to the Assureds to reiterate that they had "not received any feedback on the adjustment."

29.    By letter dated May 7, 2021, North Star outlined it position "with respect to resolving the issues of NHC coverage for the repair/rebuild of the Vessel

for the damages associated with the October 10, 2018 casualty."  The letter continued stating: "our conclusions regarding the meaning and application of the Policy language are in many respects fundamentally different than the interpretation of the Policy terms and the Interim Adjustment offered by NHC and RHL."  North Star asserted its position that the escalation clause in the Policy "provides for an adjustment of Agreed Value in the event of an increase or decrease in the cost of labor or materials or in the event of any change in specifications or design of the vessel."  North Star also commented: "NHC has taken the position that because no limit was inserted in the written policy that the entire escalation clause is void. This position is contrary to all applicable law and our position is that there is no limit on the percentage of escalation."

      30.    By  letter dated May 20, 2021, NHC responded to the letter from North Star and clarified its position on use and application of the Escalation Clause in AIBRC form clauses of the Policy: "As you have correctly pointed out, it is the position of insurers that where no % is inserted in the relevant section of the policy, the Escalation Clause does not apply."  NHC further provided: "we have again considered the position carefully, but at present we can see no basis on which to accept that by leaving the % blank, there was ever an intention that the policy limit could be increased by an unlimited amount.  This seems to be contrary to both a plain reading of the relevant clauses and also commercial sense."

31.     By letter dated August 12, 2021, NHC wrote to Assureds to ask that the Assured "either confirm payment instructions for the remaining balance as adjusted by RHL or advise that the Assured request us to await paying the amount as adjusted by RHL."

32.     By letter dated August 17, 2021, the Assureds' responded:  "If NHC is prepared to make any unconditional payment of additional funds on the Assureds' claim, NHC should do so immediately.  'Unconditional' means, among other things, that the payment is to be made without prejudice to the Assureds' rights to recover additional funds, and with NHC's understanding that the Assureds dispute the adjustment presented by NHC's adjuster."

33.     Finally, by letter dated August 26, 2021, counsel for North Star and ESG wrote to NHC "to demand that the Insurers pay without additional delay all losses sustained by the Assureds with respect to the vessel NORTH STAR as a result of Hurricane Michael, including all costs of refloating, protecting, and repairing the vessel".  The letter continued: "North Star and Eastern [ESG] intend to pursue legal action to enforce their rights under the Policy and obtain legal redress for the Insurers' bad faith unless the Insurers promptly comply with their obligations.  The Insurers have refused to pay over $23 million in losses on the ground that total losses exceed Policy limits.  The Insurers have sought to defend their position primarily by asserting that the Escalation Clause in the Policy is unenforceable."

34.    As set forth in greater detail below, Underwriters now seek a declaratory judgment from this Court that:

a.    Underwriters have fully paid the claim up to the limit of the Agreed Value under the Policy, and no further amounts are due and owing to the Assureds;

b.    Underwriters are not obligated to pay Assureds under the Policy in excess of the amounts already paid or to be paid up to the Agreed Value or Final Contract Value of USD 77,000,000 less the deductible;

c.    the form Escalation Clause in the Policy does not operate to entitle the Assureds to recover any additional PA coverage limit or to increase the stipulated PA coverage limits under the Policy.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS --**
**PLAINTIFFS ARE ENTITLED TO A DECLARATORY JUDGMENT**
**THAT UNDERWRITERS ARE NOT OBLIGATED TO PAY THE**
**ASSUREDS UNDER THE POLICY IN EXCESS OF THE FINAL**
**CONTRACT VALUE OF**
**USD 77,000,000**

35.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 34 of this Complaint.

36.     Plaintiffs issued a policy to Assureds to cover Builder's and Marine Risks during construction of a "New Fishing Vessel" including under "Interest" the following: "Hulls, Materials etc. Machinery, Outfit and everything connected therewith."

37.     The Policy cover note incorporated by reference under "Conditions" the following: "*American Institute Builders Risks Clauses (Feb. 8, 1979)(13-L), American Hull Insurance Syndicate Addendum No. 1 to the American Institute Builder's Risk Clauses (Feb. 8 1979) 13L-1. Protection and Indemnity Clause in the American Institute Builders Risks Clauses deleted and replaced with Protection and Indemnity as per SP 23 (Revised 1/56) during launching and trials*."

38.     The Policy cover note stipulated a "Final Contract  Value: USD 77,000,000 and describes the sum insured as 100% of value and amounts as herein"

39.     The American  Institute  Builder's  Risk  Clauses  (AIBRC) incorporated by the Policy cover note provided "Agreed Value" at Lines 37-42. The AIBRC incorporated by the Policy cover note provided "Escalation" at lines 43-48.

40.     The Assureds have asserted that Underwriters have taken "bad faith coverage positions" involving or relating to "incorrect construction and application of policy provisions including Policy Risk Details and/or Cover Notes (and specifically the 'INTEREST,' 'SUM INSURED' and 'INFORMATION' clauses); and the  AIBRC  clauses  (specifically  'SUBJECT  MATTER',  'AGREED  VALUE,'

'ESCALATION,' 'AMOUNT INSURED HEREUNDER['], 'TOTAL LOSS' and 'SUE AND LABOR' clauses.)"

41.    An actual controversy exists between the Assureds and Underwriters rights under the Policy, as described above, and there is a present and practical need for the Court to resolve this dispute.

42.    A declaration by this Court of the rights and obligations of the parties under the Policy will materially advance the interests of the parties, and resolve the controversy without further suit.

43.    All conditions precedent to the bringing of this action have occurred, been performed or have been waived.

44.    By reason of the foregoing, pursuant to 28 U.S.C. §2201, Underwriters seek a declaration of their rights and obligations under the Policy. Underwriters respectfully request this Court to issue a declaratory judgment as follows:

45.    (A) Underwriters, consisting of leading underwriter Norwegian Hull Club, and subscribing underwriters Royal and Sun Alliance Insurance Plc, Lloyd's syndicates Brit Syn - 2987, Markel Syn - 3000, QBE Syn - 1036, Channel Syn - 2015, and Neon Syn - 2468 ("Lloyd's Syndicates"), and Allianz Global Corporate & Specialty Marine Insurance Company ("AGCS") issued Builder's Risk Policy No. MAHHY1603684 (the "Policy") to cover the risks associated with construction and

delivery of a "New Fishing Vessel," the M/V NORTH STAR, to be constructed at defendant ESG's facility in Panama City, Florida.

46.     (B) The Policy incorporated, among other clauses and provisions, an Agreed Value and Escalation Clause.

47.     (C) The Agreed Value is the maximum liability of Underwriters under the Policy, and was stipulated to be the "Final Contract Price: USD 77,000,000" stated in the Policy cover note.

48.     (D) The Escalation Clause relied upon by the Assureds to claim a separate increased limit of coverage by adjustment of the Agreed Value is a form clause incorporated by reference in the Policy cover note.

49.     (E) The Escalation Clause form language permits an adjustment of the Agreed Value "in the event of any increase or decrease in the cost of labor or materials or in the event of any change in the specifications or design of the Vessel,"

50.     (F) The Escalation Clause specifies "but any increase shall be limited to ……… per cent of the Agreed Value as provisionally declared,"

51.     (G) The Assureds did not declare a  per cent (%) increase of the Agreed Value as provided in the form AIBRC clause, but instead the form language was left blank ("…….. per cent") by the Assured.

52.     (H) The Policy cover note does not address the Escalation Clause, nor does it provide a value for a percent (%) of adjustment to increase the Agreed

Value available to the Assureds as an increased limit of coverage or increase adjustment of the Agreed Value.

53.     (I) the Policy does not provide an unlimited increase in coverage by the Assureds' unilateral adjustment of the Agreed Value.

54.     (J) the Assureds' failure to provisionally declare a % increase to adjust the Agreed Value to Underwriters as required by the Escalation Clause, and the Assureds leaving the Escalation Clause blank (or "….. per cent") precludes the Assureds from relying on the Escalation Clause to "automatically increase coverage limits" under the Policy above the stipulated Agreed Value in the Policy.

55.     (K)  Underwriters have paid in full the limits of the Policy in the aforesaid total amount of  USD 77,000,000 less deductible of USD 150,000 to the Assureds, and are not liable for any further payments under the Policy.

56.     Plaintiffs reserve the right to assert and rely upon additional policy provisions to the extent that they are found to apply as this litigation progresses, and to seek such further declarations as may be appropriate.

57.     Underwriters request this Court to issue such other and further relief, at law or in equity, to which they may be justly entitled.

        **WHEREFORE**, Underwriters respectfully request that this Court grant Underwriters a judgment declaring:

1.     that Underwriters have fully paid the Assureds' claims up to the maximum limit under the Policy, and no further amounts are due and owing;

2.     that Underwriters are not obligated to pay Assureds under the Policy in excess of USD 77,000,000;

3.     that the Escalation Clause in the Policy does not entitle the Assureds to claim any additional limit of coverage over the Agreed Value stipulated in the Policy;

4.     that Underwriters be awarded such other and further relief as may be warranted.

Dated:        September 9, 2021

**HOLLAND & KNIGHT LLP**

*/S/ Timothy J. Conner*
Timothy J. Conner
Florida Bar No. 767580
Primary: timothy.conner@hklaw.com
Secondary: camille.winn@hklaw.com
Jennifer A. Mansfield
Florida Bar No. 0186724
Primary: jennifer.mansfield@hklaw.com
Secondary: camille.winn@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone: (904) 353-2000

*Attorneys for Plaintiffs Norwegian Hull Club and subscribing Underwriters to the Policy Number MAHHY1603684*