# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

NORWEGIAN HULL CLUB et al.,

      Plaintiffs,

v.                                     CASE NO. 5:21cv181-RH-MJF

NORTH STAR FISHING
COMPANY LLC et al.,

      Defendants.

_____/

## ORDER STRIKING THE JURY DEMAND

      This case presents a dispute over the meaning and application of a builder's risk insurance policy covering a vessel under construction. When the vessel was nearing completion—in the water at a port after having been launched in navigable waters—a hurricane set it adrift. The vessel grounded and suffered extensive damage.

      The underwriters filed this action against the assureds seeking a declaration that they have paid all that is due under the policy. The underwriters explicitly designated the claim as in admiralty. *See* Fed. R. Civ. P. 9(h)(1). The assureds counterclaimed for amounts they assert are due under the policy. They did not

designate the counterclaim as in admiralty; they assert it is a claim at law. The assureds demanded a jury trial.

The underwriters have moved to strike the jury demand. They assert that both their claim and the counterclaim are within the court's admiralty jurisdiction and that the assureds thus have no right to a jury trial. The case would be within the court's diversity jurisdiction, even in the absence of admiralty jurisdiction, but the underwriters are correct that if, as they assert, their claim is within the court's admiralty jurisdiction, the assureds have no right to a jury trial. *See St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181 (11th Cir. 2009).

Whatever one might say about the life of the law more generally, the proper approach to classifying matters as maritime or nonmaritime focuses on experience—on distinctions entrenched in precedent—more than on logic. *See* Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 3:10 (6th ed. 2018). The distinctions are rife with inconsistencies. Consider two identical contracts to add identical features to identical vessels. The first vessel has been completed and delivered to the owner, taken to sea for perhaps an hour, and then, on a change of heart, brought back in for installation of additional features. The second vessel has been completed except for the same features—the owner will not take delivery until those features are added—but the vessel has been taken to sea for an hour, perhaps much longer, for trials. The contract to install the features on the first

vessel is maritime. The contract to install the features on the second vessel is nonmaritime. *See, e.g.*, *Hatteras of Lauderdale, Inc. v. Gemini Lady*, 853 F.2d 848 (11th Cir. 1988). This is so because of the settled rule that contracts to repair existing vessels are maritime while contracts to build new vessels are nonmaritime—even if the contracts cover exactly the same work in exactly the same manner at exactly the same place. The rule is the rule, even if it can be explained only as a matter of precedent, not logic.

Just as clearly, contracts to insure vessels are maritime. This has been said time and again. *See, e.g.*, *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961) (stating the "boundaries of admiralty jurisdiction over contracts . . . have always been difficult to draw" but contracts to insure a ship are maritime) (citing *New England Mut. Marine Ins. Co. v. Dunham*, 78 U.S. 1 (1870)); *see also* Schoenbaum, *supra*, §§ 3:10 & 19:2 (stating maritime insurance contracts invoke admiralty jurisdiction and specifically actions "to recover under a (ship) builder's risk policy are within admiralty jurisdiction.").

There is little logic in the rule that a contract to build a new vessel is nonmaritime, while a builder's risk policy insuring the vessel while under construction is maritime. But the rule is the rule, even if it can be explained only as a matter of precedent, not logic.

If we wrote a clean slate, perhaps a contract to build a vessel would be treated the same as a contract to insure the vessel. But if we wrote on a clean slate, the inconsistency might well be resolved by treating both the construction contract and the insurance contract as maritime, at least when, as here, the vessel is large and will sail the oceans. Make no mistake: the entire enterprise is directed toward building and launching a vessel for use in navigable waters. And one ought not lose sight of the principal risk covered by marine insurance, even builder's risk insurance on a vessel under construction: loss of or damage to a vessel in the water. That is the risk that came to fruition here.

In asserting the contrary, the assureds misread circuit precedent. In *Walter v. Marine Office of America*, 537 F.2d 89 (5th Cir. 1976), the dispute was over the meaning and application of a builder's risk policy covering a vessel under construction. Under the heading "The Controlling Legal Regime," the court applied admiralty principles. The court started with *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310 (1955), the leading Supreme Court case on choice of law in admiralty cases. There, as described in *Walter*, the Supreme Court "set out the now familiar principle applicable in the maritime insurance situations that, in the absence of federal legislation or a conflicting rule of law judicially established by the Federal Courts, state law would apply to the regulation of marine insurance matters." *Walter*, 537 F.2d at 94. The court said there was "no

firmly established regime of federal law" on the meaning of the policy provision at issue there, so state law—specifically Louisiana law—was applicable.

The assureds say this shows the dispute was nonmaritime. In fact, it shows precisely the opposite. The controlling authority was *Wilburn Boat*—a decision establishing federal admiralty principles. State law supplied the rule of decision only because, as a matter of federal admiralty law, a federal admiralty court sometimes looks to state law to supply the rule of decision. *Walter*'s application of admiralty law as the "controlling legal regime" in a builder's risk dispute is the binding law of the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

The same approach applies here. This case, like *Walter*, presents a dispute over the meaning and application of a builder's risk policy covering a new vessel. Here, as in *Walter*, federal admiralty principles apply. Here, as in *Walter*, there is no federal legislation or admiralty rule governing the disputed issue, so, under *Wilburn Boat*, federal admiralty law calls for application of state law. But here, as in *Walter*, this does not transform the case from one in admiralty to one arising under state law. This case, like *Walter*, is an admiralty case, in which state law supplies the rule of decision only because that is what federal admiralty law requires.

*Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689 (11th Cir. 1984) *modified on reh'g*, 779 F.2d 1485 (11th Cir. 1986), is not to the contrary. The case arose from a loss of cargo at sea—plainly a maritime event. The issue was whether the party who suffered the loss could bring a direct action against the allegedly responsible party's protective and indemnity insurer. At the relevant time, Florida law allowed direct actions. After citing *Wilburn Boat*, the court held the Florida direct-action principle not inconsistent with federal admiralty principles, so the court allowed the direct action to proceed. As part of the discussion, the court noted an earlier Fifth Circuit decision on direct actions, *Cushing v. Maryland Casualty Co.*, 198 F.2d 536 (5th Cir. 1952), and said there the actions were at law. But those actions arose from the death of seamen; that the actions were said to be at law tells one nothing about whether the assureds' claims against the underwriters here were at law, and even less about whether the underwriters' claim against the assureds is necessarily at law. *Steelmet* speaks not at all to the question whether a dispute under a builder's risk policy on a new vessel is maritime.

In *Hatteras of Lauderdale, Inc. v. Gemini Lady*, 853 F.2d 848 (11th Cir. 1988), an owner refused to pay for the builder's customization of a new vessel. The court recognized the accepted principle, as set out above, that a contract to build a new vessel is nonmaritime while a contract to repair a vessel is maritime. The court concluded the customization at issue was attendant to building the new

vessel and the dispute thus was nonmaritime. Insurance was not involved, and the case speaks not at all to the critical question here: whether a builder's risk insurance policy is maritime.

Finally, *Bender Shipbuilding & Repair Co. v. Brasileiro*, 874 F.2d 1551 (11th Cir. 1989), involved a builder's risk policy on a floating dock under construction. The dock broke free during a storm, crossed a river, and collided with a vessel. Because of this, the builder missed the deadline for completion of the dock. The owner claimed liquidated damages for the delay. The builder, who was an insured under the builder's risk policy, sought indemnity from the insurer for any delay damages. The court recognized that "marine insurance policies are generally recognized as being marine contracts and, therefore, within the federal admiralty jurisdiction." *Id*. at 1554. But the court said that for this to be so, the "interest insured, and not just the risk insured against, must be maritime." *Id*. at 1555. The court noted that courts have consistently said floating docks are not vessels.

The court labeled "plausible" the assertion that this dock, having broken free, was a "vessel" at the time of the collision, thus bringing the indemnity claim within the court's admiralty jurisdiction. But the court did not resolve the issue, holding instead that there was an alternative basis for jurisdiction: the striking of

the other vessel brought the case within the "tort branch" of admiralty jurisdiction. *Id*. at 1555.

That insurance covering a nonmaritime dock is nonmaritime is hardly surprising—insurance covering a house or car or factory also is nonmaritime. And while *Bender* suggests that perhaps this would change once the dock broke free—a position that would support the underwriters here, because this vessel, too, broke free—it seems more likely that the policy was maritime or nonmaritime all along. What is important here is that *Bender* recognized the settled rule that marine insurance—insurance on vessels—is maritime. Indeed, *Bender* seemed to assume that, had the case involved a traditional vessel under construction rather than a dock, the builder's risk policy would have been maritime. Why else would it have mattered whether a floating dock is a vessel, or whether this dock became a vessel when it broke free?

Nonetheless, the assureds seize on the statement that the "interest insured, and not just the risk insured against, must be maritime." *Id*. at 1555. The court said this with reference to a nonmaritime dock, and the case the court cited, *Royal Insurance Co. v. Pier 39 Ltd.*, 738 F.2d 1035 (9th Cir.1984), also dealt with a nonmaritime dock. *Bender* did not involve a policy insuring a vessel. The court suggested no disagreement at all with the accepted, oft-repeated statement that marine insurance is maritime. The court said only, in effect, that for this principle

to apply, the marine insurance must be marine insurance—insurance on a vessel, not on a dock.

To be sure, both the Supreme Court and the Eleventh Circuit have said, when noting that contracts to build a new vessel are nonmaritime, that a vessel under construction becomes a vessel for maritime purposes when it is "completed and launched." *N. Pac. Steamship Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 127 (1918); *Hatteras*, 853 F.2d at 850. This is just the standard that governs application of the first half of the curious but well established rule noted above: contracts to build new vessels are nonmaritime while contracts insuring vessels under construction are maritime. Neither *North Pacific* nor *Hatteras* suggested the "completed and launched" standard applies to marine insurance, nor has any other decision the assureds have cited.

In sum, the underwriters properly invoked the court's admiralty jurisdiction. The assureds' counterclaim, too, is governed by admiralty law, which, under *Wilburn Boat*, applies state law in appropriate respects. And even if the counterclaim was at law, the underwriters' prior invocation of admiralty jurisdiction would trump the assureds' demand for a jury trial. That is the square holding of *St. Paul Fire & Marine Insurance Co. v. Lago Canyon, Inc.*, 561 F.3d 1181 (11th Cir. 2009). This order thus strikes the demand for a jury trial. The case will be tried to the court.

IT IS ORDERED:

The underwriters' motion to strike the jury demand, ECF No. 79, is granted.

SO ORDERED on March 10, 2023.

                                       s/Robert L. Hinkle
                                       United States District Judge